## LOONEY v. UNITED STATES (two cases).

District Court, W. D. Louisiana, Shreveport Division. May 23, 1928.

Nos. 1683, 1684.

Internal revenue ☞27(2)—Parties purchasing opposing litigant's claimed interest in land held not liable for income tax on oil royalties vendor received on purchase price.

Where plaintiffs compromised lawsuit regarding title to land by purchasing opponent's claimed interest in land, under agreement that purchase price should be paid out of royalties from oil and gas, and that vendors should receive such royalties directly from bank receiving same from oil company, revenues received by vendors did not pass to plaintiffs as income, and they were not liable for income tax thereon, and were entitled to recover income tax paid thereon under protest.

At Law. Actions by Frank J. Looney and Mrs. Frank J. Looney against the United States. The actions were consolidated. Decree for plaintiffs.

J. M. Grimmet, W. Pike Hall, and Frank J. Looney, all of Shreveport, La., for plaintiffs.

P. H. Mecom, U. S. Atty., J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La., and E. O. Hanson, of Washington, D. C., for the United States.

DAWKINS, District Judge. In these two suits the plaintiffs, husband and wife, living under the régime of the community of the Louisiana law, seek to recover sums paid under protest as income taxes for the year 1921. The circumstances out of which the liability for taxes is alleged to have arisen are as follows:

On June 23, 1920, there was pending in this court a suit, No. 1235, by Lillie G. Taylor, colored, against George West, involving the title to the following property, situated in what was known as the proven Homer oil field in Claiborne parish, to wit:

"All of the southeast quarter of the southeast quarter (SE¼ of SE¼), section eighteen (18), lying south of the Minden and Sykes Ferry road; the northeast quarter of the northeast quarter (NE¼ of NE¼), section nineteen (19); and all of the northwest quarter of the northeast quarter (NW¼ of NE¼), section nineteen (19), except that part thereof known as a part of the Len Langston farm; and the northwest quarter of the northwest quarter (NW¼ of NW¼), section twenty (20), township twenty-one (21) north, range seven (7) west, Claiborne parish, Louisiana, being 91 acres more or less."

The law firm of, Foster, Looney & Wilkinson, of Shreveport, La., of which said F. J. Looney was a member, had acquired from the said Lillie G. Taylor a one-half interest in such title as she owned at that time to said property which had been previously leased by her to the Caddo Central Oil & Refining Corporation, with the reservation of a one-eighth royalty, and which had the effect of vesting in the said law firm a one-half interest therein, or a one-sixteenth of the rental or royalty that might arise therefrom.

One George West also claimed the ownership of said land, and had, previous to the agreement hereinafter referred to, given to H. C. Walker, Jr., for the firm of Goldstein & Walker, a lease upon the same land, retaining a one forty-eighth royalty for himself, and said Walker in turn assigned the lease to the Gulf Refining Company of Louisiana, reserving a one twenty-fourth royalty interest.

On June 23, 1920, the said West and Walker & Goldstein, on the one part, and the individual members of the firm of Foster, Looney & Wilkinson, to wit, J. M. Foster, F. J. Looney (one of the plaintiffs herein), and W. A. Wilkinson, entered into an agreement, the pertinent provisions of which are as follows:

"Whereas, the parties hereto desire and have agreed to compromise the aforesaid lawsuit in so far as it relates to the interest above described, together with one-sixth (⅙) of the royalty reserved by the said George West under the aforesaid lease to H. C. Walker, Jr., which one-sixth (⅙) is equivalent to one forty-eighth (⅟₄₈) of the oil, gas, and other minerals produced from the aforesaid leases; and,

"Whereas, all of the parties hereto have agreed that such compromise shall be effected by the sale by the said H. C. Walker, Jr., and the said Elias Goldstein to the said vendee of the said one twenty-fourth (⅟₂₄) interest, and by a sale to the same parties by the said George West of an undivided one forty-eighth (⅟₄₈) interest in the oil, gas and other minerals produced from the aforesaid land (including one-sixth (⅙) of the total royalty reserved by the said George West under the aforesaid lease:

"Now, therefore, the said H. C. Walker, Jr., and Elias Goldstein do sell, transfer, and convey unto the aforesaid vendees the excess royalty of one twenty-fourth (⅟₂₄) of all the oil, gas, and other minerals reserved by them under the aforesaid lease granted by George West and assigned to the Gulf Refining Company of Louisiana in so far as same affects and applies to the above described tract of land; and the said George West sells, transfers and conveys to the said vendees an undivided one forty-eighth (⅟₄₈) interest in the oil, gas, and other minerals in and under the aforesaid land, including an undivided one-sixth (⅙) of the royalty reserved by him under the aforesaid lease in so far as the same affects and applies to the above-described tract of land under the following terms and conditions, and for the consideration as hereinafter set forth:

"This sale is made without warranty of any kind even as to the return of the purchase price, and the execution of this instrument by the parties hereto shall not be regarded as a recognition by any of the vendees hereunder of the title of the said vendors to the interest herein conveyed or any part thereof, and shall not be construed as a recognition by the said vendors of any title or interest in the said Lillie G. Taylor and said vendees in and to the aforesaid land, and shall be entirely without effect upon the aforesaid suit now pending in the United States District Court, except with regard to the interest conveyed.

"The consideration of this sale is the sum of two hundred thousand ($200,000.00) dollars, to be paid entirely out of the oil produced from the above described tract of land, either by the lessees of the said George West and their assigns, or by the lessees of the said Lillie G. Taylor and their assigns and accruing to the credit of the undivided one-sixteenth (⅟₁₆) interest that is vested in the said vendees by reason of the purchase above referred to by them from the said Lillie G.

Taylor on the one hand, and by reason of their purchase from the said vendors under this contract on the other hand.

"Immediately upon the execution of this contract the said vendees shall be entitled to withdraw and receive from the Gulf Refining Company of Louisiana all sums accruing to the credit of the interest hereby transferred to them by the said vendors, up to June 1, 1920, which sums shall be retained by them free of any claim on the part of these vendors; but all sums hereinafter accruing to the credit of the aforesaid one-sixteenth (1/16) interest shall be paid by the lessees under the leases granted by the said George West and by Lillie G. Taylor, their heirs and assigns to the City Savings Bank & Trust Company of Shreveport, Louisiana, hereinafter referred to as the bank, which bank is hereby made the agent of all the parties hereto for the purpose of receiving such royalty, acknowledging receipt thereof and holding and distributing the sums in accordance with the provisions of this contract.

"The sums received by the said bank under this contract shall be deposited to the credit of an account to be known as 'Escrow Account, George West, H. C. Walker, Jr., and Elias Goldstein,' and shall be paid out by the said bank as follows:

"On the 2d day of January, 1921, 1922, 1923, and 1924, the aforesaid bank shall withdraw from the said account the sum of fifty thousand ($50,000.00) dollars, and shall credit same to the said vendors in the proportion of one-third (1/3) to each. In the event that there should not be sufficient funds to the credit of the aforesaid account to make such payment at the due date thereof, the said bank shall pay to the said vendors the entire amount to the credit of the said account, and shall continue to make payments from month to month as sums are received by it to the credit of the said account until the deficiency in the payment shall have been made up.

"If the full sum of two hundred thousand ($200,000.00) dollars shall not have been received by the aforesaid bank on or before the 2d day of January, 1924, then and in that event the royalties accruing to the credit of the aforesaid one-sixteenth (1/16) mineral interest shall continue to be paid to the said bank until it shall have received the full sum of two hundred thousand ($200,000.00) dollars; it being the intent of the parties to this contract that the said vendors shall receive two hundred thousand ($200,000.00) dollars out of the royalties accruing to the credit of the aforesaid undivided one-sixteenth (1/16)

interest before the said vendees shall receive any further income from the aforesaid royalties or become entitled to any portion thereof.

"During the term of this contract, and as long as money shall be deposited with it hereunder, the said City Savings Bank & Trust Company shall pay interest on the daily balances to the credit of the aforesaid escrow account at the rate of four per cent. (4%) per annum, such interest payments to be added to and to form a portion of the funds to the credit of the aforesaid account, and to be credited to the said bank quarterly until the said sum of two hundred thousand ($200,000.00) dollars shall have been credited to said account, when and thereafter such interest payments on the sums remaining on deposit in said bank under the terms hereof shall be paid to the vendees.

"And hereunto appears the City Savings Bank & Trust Company, through its cashier, L. H. Baker, and accepts the mandate imposed on it by this contract, and agrees to pay interest on the sums deposited with it as hereinabove set forth."

It is the contention of the government, in effect, that under this contract the parties therein designated as vendors and vendees were each claiming ownership of a one-sixteenth interest in the mineral rights attaching to said property, and that Looney and associates, in order to clear or perfect their title, purchased the claims of West et al. at a price of $200,000, and, instead of paying the same in cash, stipulated that the vendors should receive the revenues arising from the royalty until that sum had been realized. In other words, that in so far as the liability of Looney and his associates for income taxes was concerned the situation was the same as if they had paid to West et al. the sum of $200,000 cash for an undisputed ownership of one-half of the rights conveyed as a capital investment, and thereafter had received the revenues and royalties from the oil themselves. If the latter course had been pursued, and there had been no question as to the vendors' title to the interest so conveyed, it could hardly be denied that petitioners would have owed the taxes upon such income.

On the other hand, it is the contention of the plaintiffs (who made separate returns because of the community laws of Louisiana, and which makes them jointly liable for the tax if legally due) that the transaction with West and others was a compromise settlement of a lawsuit, the subject-matter of which was this oil royalty, and under the

terms of the agreement West and associates were to receive out of the subject of the litigation $200,000 that was never intended, and, in fact, never actually passed into the hands of Foster, Looney & Wilkinson, who received the royalty subject to the payment and deduction therefrom of the said sum to the other parties to said agreement.

It is not pretended that the firm of Foster, Looney & Wilkinson ever actually received or derived any benefit from the $200,000 referred to, except it be treated as a payment in perfecting the title to the said royalty interest, and the assertion by the government of the right to claim it as income is based upon the technical result alleged to flow from the purchase of property producing a revenue, with the stipulation that these revenues be paid to other persons for the benefit of the vendees in discharging the price.

The court, I think, should look through the forms in which the parties couched their agreement and attempt to ascertain its true nature and import. Prior to the making of this contract, there existed certain property, to wit, this royalty interest, the exact value of which was unknown, claimed by both interests. If they had allowed the matter to be decided by the courts, one or the other would necessarily have been decreed owner of the whole. (Subsequently the title to Lillie G. Taylor, through whom Foster, Looney & Wilkinson claimed, was sustained.) However, rather than take chances on such an eventuality, they deemed it better to effect a compromise by which each would take less than the whole, and in the proportions indicated by the above-quoted agreement. Therefore Foster, Looney & Wilkinson, whether termed vendees or what not, never did receive the full interest in the subject-matter of the litigation, but became the owners thereof less the sum paid to West and his associates from the royalty.

Counsel for the government have cited numerous cases where the owners of real property have directed that the rents be paid to other persons, and where corporations, instead of receiving certain revenues or funds, have had them paid to other persons for rent, or to stockholders as a valuable consideration flowing to the owner of the property, or because of the interest of the stockholders in the distribution of the fund by virtue of their stock interest in the corporation, which entitled them both legally and equitably to receive the same. On the other hand, in the present case there is no corresponding consideration for the $200,000, except the foregoing, of the right to claim an interest in what was left of the royalties, and as to which the very willingness to make the contract indicated a belief in the vendors that Looney et al. had a very substantial claim thereto arising from other sources.

As stated by counsel in brief, there does not appear to be a similar case in the jurisprudence. However, I do not think the situation is different to what it would have been, had the firm of Foster, Looney & Wilkinson purchased a valuable building, and in doing so agreed that the vendors should receive the rents of 1921, either as a part of the purchase price or in settlement of some adverse claim against the said building. In either event, their right to receive and enjoy the whole revenues would have been reduced just so much, and, being so reserved, would never have passed to the purchasers' income. In other words, both in the illustrated instance and in the case at hand, I think the result was to convey the property, subject to the right on the part of the vendors to take the revenues to the extent indicated, and that they would not and did not pass to Foster, Looney & Wilkinson as income, for which they were bound to account.

My conclusion is, therefore, that the plaintiffs are entitled to judgment for the recovery of the sums sued for. Proper decree may be presented. Rulings upon the requested findings of fact and law will be made at that time.